INDEPENDENT ORDER OF THE SONS AND DAUGHTERS OF JACOB OF AMERICA *v.* THOMAS ALLEN, GUARDIAN.

1. BENEFIT SOCIETY.   *Designation of beneficiary.*

> The person named as beneficiary in a certificate of membership in a benevolent society is entitled to the amount due at the death of the member, when, by the declaration of incorporation and constitution of the society, the same is subject to the member s direction.

2. SAME.   *Designation of concubine.*

> Expressions in the organic law of a benefit society indicative of moral and benevolent purposes do not preclude the valid designation of one with whom the member is living in immoral sexual relations as beneficiary in his certificate, to the exclusion of his family, when, by such organic law, he has the unrestricted right to direct to whom the benefit shall inure at his death.

FROM the chancery court of Warren county.
HON. CLAUDE PINTARD, Chancellor.

The infant children of John Henderson, deceased, by Thomas Allen, their guardian, appellee, were the complainants in the court below; the Independent Order, etc., the appellant, was defendant there. John Henderson, the complainant's ancestor, became a member of the order of the Sons and Daughters of Jacob, a benefit society, and, in his certificate of membership, named Love Lucas as the beneficiary. After his death, appellees, by their guardian, filed a bill, making Love Lucas and the society parties, insisting that the fund due on the certificate should be paid to the guardian for the benefit of complainants, the infant children of John Henderson. The bill charges that the relations between John Henderson and Love Lucas were improper and illicit and at variance with the objects and purposes of the order. A demurrer was interposed and overruled, and the order answered, insisting that the certificate was issued in accordance with its charter and constitution. The answer of Love Lucas denies the unlawful relations charged, and refers to the certificate issued in her favor. The declaration of incorporation and constitution of the society, read in evidence by the complainant, contained the provisions set out in the opinion of the court, together with others expressive of moral and benevolent purposes. On final hearing there was a decree in favor of the guardian, from which this appeal is prosecuted.

*Shelton & Brunini*, for the appellant, Love Lucas.

In the charter in question we find four objects stated as the purpose and design of the corporation: (1) A fraternal union between all persons of good moral character. (2) Mutual aid, mentally and morally, to living members. (3) The establishment and maintenance of a benefit fund, not to exceed one thousand dollars, to be paid at death, either to members of the family or as he or she shall direct. (4) To establish a fund for the relief of sick members, and burial of those who die, and to provide for such other objects of charity as may be directed by the constitution, objects and laws of the corporation.

The only other thing that we find referred to in the constitution, is that, in section 4, on page 8, an article directs the creating of a fund, as soon as possible, establishing a school for the education of the children of deceased members, and, in section 1, page 43, under the laws of the Mississippi division, a proposition to establish a school for the education of orphans who are members of the order. Then the only reference in the whole thing that we find to widows or children of deceased members is in the use of the word "family" in the charter, and the proposition to create a fund for the education of the children of deceased members. The provision in the laws of the Mississippi division does not look to a school for the education of the children of deceased members, but to orphans, who are themselves members of the order.

Coming now to the third section of the charter, we find that the creation of the benefit fund is provided for as one of the objects of the association, and in section 3 on page 8 of the constitution the same provision is made. These are the only two sections which relate in any way to this, one of the four objects of the society. Now, if specific words declaring the object are to be found, they must be found in one of these sections, and the power of the corporation with reference to this object must be found in the third section of the charter and the third section of the constitution. In the charter the object is declared to be "to establish and maintain a benefit fund." In the constitution it is declared to be "to promote benevolence by establishing a benefit fund." In the charter this fund is "to be paid to the family or disposed of as he or she shall direct." In the constitution the word "family" is omitted and the provision is that it shall be paid at death "as he or she may have directed." In these two sections we fail to find any specific words which limit the meaning of the expression "as he or she shall direct," found in the charter, or the words "as he or she may have directed," found in the constitution. The word "family" cannot limit those words, for, according to the rule

announced by the Massachusetts court in *McCarthy* v. *Supreme Lodge*, 25 Am. St. Rep., 639, we see here two classes provided for: (1) The family—that is, anyone embraced in the deceased member's family—and (2) if the member prefer not to leave the fund to the family, then to anyone whom he may select. The first is a limited class; the second is unlimited save by the choice of the member.

It is said that as the society is a charitable and benevolent one, therefore the contract is void. In the first place, it is clear from the whole charter that it is a mutual aid or benefit society, gotten up almost entirely with reference to its living members, and having no reference to the families of deceased members, except that the family is named as one of the classes to which the insurance may go. All the objects stated relate to benefits to the living. This is the predominant idea. Those objects are: Fraternity, mutual aid, help to the sick members, burial of dead members, and a benefit fund to be used as the member may choose. The word " charity " is used only once, and that in section 4 of the charter, and the society, in its constitution, seems to have exhausted that direction by providing for the raising of a fund to educate orphans. The corporation, while benevolent in a degree, is not a benevolent organization in the sense of dispensing benefits without consideration, since membership is dependent on the payment of dues, and the insurance procured is paid for. Undoubtedly the terms of the contract by which the member had the absolute right to designate his beneficiary should prevail. 3 Am. & Eng. Enc. L. (2d ed.), 1043, 1046; *Bankers' Asso.* v. *Stapp*, 19 Am. St. Rep., 788; *Lake* v. *Minn., etc., Asso.*, 52 Am. St. Rep., 559; *Carson* v. *Vicksburg Bank*, 75 Miss., 167; *Lister* v. *Lister*, Mo. App. (January 10, 1898), 24.

*Dabney & McCabe*, for the appellant, Independent Order, etc.

The moral character of Love Lucas is wholly immaterial to the determination of this controversy. She is the beneficiary

named in the certificate of a member who had the unrestricted right to designate the person who should be entitled to the benefit of his membership. Her rights are to be determined solely by the laws of the order, without taking into consideration any other matter of fact.    3 Am. & Eng. Enc. L. (2d ed.), pp. 990, 996, 999.

*Harris Dickson*, for appellees.

Is the designation of Love Lucas, under all the circumstances of this case, a valid one? Is she one of that class authorized to take? By the charter, this fund is payable, upon the death of a member, to "his or her family, or otherwise disposed of as he or she may direct." The constitution, sec. 3, art. 2, gives the foundation stone upon which this fund is built: "To promote benevolence by establishing a benefit fund, from which a sum of not more than one thousand dollars shall be paid at the death of each third degree member in good standing, as he or she may have directed." If, therefore, there should be any doubt as to the general purposes of the order, there can be none as to its purpose in creating this particular fund—"to promote benevolence." It certainly cannot be urged that any sort of benevolent purpose is promoted, in the remotest degree, by disbursing a fund to an adulterous mistress, and seeking to secure, after death, a support to a woman for whom it would be indictable in John Henderson to provide during his life.

The case of *Carson* v. *Vicksburg Bank*, 75 Miss., 167, points out the policy of the law in regard to these benefit societies, at least so far as the State of Mississippi is concerned. The unvarying rule of construction of these charters, and the statutes under which these companies are organized, is that they shall be construed liberally, so as to advance the benevolent purposes of the organization, but not so as to defeat them.    3 Am. & Eng. Enc. L. (2d ed.), p. 1054, note *l*, and cases there cited; 1 Bacon on Ben. Soc., sec. —; *Maneely* v. *Knights*, 115 Pa. St., 305; *Gundlach* v. *Germania, etc.*, 4 Hun (N. Y.); *Supreme*

*Lodge K. of P.* v. *Schmidt*, 98 Ind., 374; *Ballou* v. *Gile*, 50 Wis., 614; *Am. L. of H.* v. *Perry*, 140 Mass., 580; *Maneely* v. *Knights, etc.*, 115 Pa. St., 305 (9 Atl., 41); *Elsey* v. *Odd Fellows, etc.*, 142 Mass., 224; *Keener's case*, 38 Mo. App., 543; *Hysinger case*, 42 Mo. App., 628; 1 Bacon on Ben. Soc., 464, and cases there cited.

This corporation was, from its very nature, limited to accomplish certain beneficent results, and to aid certain classes of persons. Powell on Contracts, 389; *Van Hagen* v. *Van Ransellear*, 18 Johns., 423. It certainly is not fit, either to the matter or the person in the case at bar, that these general words in the charter should be held to cover the designation of a concubine, under the guise of promoting benevolence. The intent was plainly to provide a mutual and benevolent relief for those who occupied towards its members the nearest and most sacred relations of life. No lawyer would seriously contend that an authority can be conferred by implication which could not be conferred by definite, specific and apt words. Suppose, for instance, that this charter, instead of reading payable to his or her family or otherwise, as he or she may direct, had read payable to his or her family, concubine, mistress, or otherwise, etc.? Would that have been good? Would the attorney-general or governor have approved it, or any legislature have granted it? Even should the legislature of another state have granted a charter containing such a provision as that, the courts of Mississippi would have been under no sort of obligation, either through equity or law, to enforce it. Therefore, we insist that no strained construction of a general phrase can be held to include, by implication, authority to do any act, which authority would have been null had it been conferred in so many words.

There is one other idea connected with this case which it may be well to bring to the attention of this court. It is settled law on such contracts as this that the insured person has no property rights whatever in the benefit fund. He has a mere right of designation, a naked power of appointment, restricted by the laws of the order and the purposes for which the fund

was created.   This is in no sense a general power.   It is to be
executed in a general way and to attain certain ends.   In the
execution of this power he was to violate no laws of the order,
to make no designation contrary to its objects, nor violate the
criminal laws of the state, nor contravene public policy.   Sup-
pose A dies and leaves a will directing that a certain fund be used
for a certain well-defined purpose, namely, to promote charity
and benevolence.   He makes his will upon this point clear and
emphatic.   He devises an estate to such uses as John Henderson
shall appoint, and provides, in the event John Henderson does
not make a proper designation, the fund shall go to the children
of John Henderson, as being within the general purposes for
which he created the fund.   Would anyone seriously contend,
before a court of equity, that a lewd woman, "for and in con-
sideration of an immoral or adulterous and illicit relationship"
(I quote from the original bill), could so work upon the pas-
sions of the holder of the power that he should execute it in her
favor?   Would the court uphold such a designation?   Would
not the court refuse to sanction such a flagrant departure from
the original intent of the donation?   Would this be promoting
benevolence or carrying out the general purpose for the further-
ance of which the power was granted?

WOODS, C. J., delivered the opinion of the court.

The third section of the declaration of incorporation of the
order is as follows:

"3. To establish and maintain a benefit fund—not more
than one thousand dollars—to be paid at the death of each
third degree member in good standing, to his or her family,
or disposed of as he or she shall direct, but the death benefit
shall be limited to assessment *per capita* till each assessment
reaches one thousand dollars."

The third section of the second article of the constitution of
the order is in these words, viz.:

"Sec. 3. To promote benevolence by establishing a benefit
fund, from which a sum, not more than one thousand dollars,

shall be paid at the death of each third degree member in good standing, as he or she may have directed; *Provided, however,* That the death benefit shall be limited to the assessment *per capita* until each reaches one thousand dollars.''

It is thus clearly seen that the member was entitled to designate any beneficiary in the certificate of membership, both by the declaration of incorporation and the constitution of the order.    By the certificate itself the order contracted to pay the amount due at the death of the member to such person or persons as are named on its face as beneficiaries.    The third section of the second article of the constitution does not name the family of the member, nor does the certificate of membership. The third article of the declaration of incorporation speaks of the fund being paid to the family, but it adds '' or disposed of as he or she shall direct.''

Language could not well be broader or more explicit, and there are no restrictive words limiting the beneficiary to the family anywhere to be found.    It is plainly a contract between the order and the member to pay the sum realized from an assessment to any beneficiary designated by the member, or, in the absence of any designation, to the family of such member.

The words employed in the certificate of membership, and in the charter and constitution, or words of similar import, have repeatedly received judicial construction, and uniformly, almost, it has been held '' that the words ' as he may direct,' or others of similar import, confer upon the member a general power of designating as beneficiary any person or persons whom he may choose.''    *Gentry* v. *Supreme Lodge Knights of Honor,* 23 Fed. Rep., 718, and cases there cited.    See to the same effect *Mitchell* v. *Grand Lodge Knights of Honor,* 70 Iowa, 360; *Massey* v. *Mutual Relief Society,* 102 N. Y., 523; *Mannly* v. *Knights of Birmingham,* 115 Pa., 305.

We are of opinion that Love Lucas is entitled to the benefits conferred by the certificate of membership.

*Reversed and remanded.*